WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Armando Nieves Martinez, et al., | No. CV-13-00955-TUC-CKJ (LAB) |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

On October 11, 2017, the Magistrate Judge issued a Report and Recommendation ("R&R") (Doc. 150) in which she recommended that this Court deny Plaintiffs' Motion for Summary Judgment (Doc. 127). After the R&R issued, the Government filed objections (Doc. 151), Plaintiffs a response (Doc. 152), and the Government a reply (Doc. 153).

The Government's Motion for Summary Judgment asks the Court to dismiss Plaintiffs' claims under the Federal Tort Claims Act ("FTCA") of negligence, gross negligence, assault, false imprisonment, and intentional infliction of emotional distress. The allegations stem from a U.S. Border Patrol checkpoint stop, interrogation, and incarceration, in which the Plaintiffs were accused of transporting methamphetamine. (Doc. 20 at 2-6.) Ultimately, no drugs were found in Plaintiffs' vehicle. (*Id.* at 7.) The Government contends the actions of Border Patrol agents lie within the discretionary function exception, precluding any liability under the FTCA. (Doc. 127 at 1.) Upon review, the Court finds that Plaintiffs' claims are precluded, and grants the Government's

Motion for Summary Judgment as to Plaintiffs' claims of negligence, gross negligence, assault, and false imprisonment. However, the Court finds Plaintiffs' intentional infliction of emotional distress claim raises a genuine issue of material fact and is not precluded under FTCA. The Court, therefore, denies summary judgment as to this issue.

***Standard of Review***

- ***Objections to R&R***

The standard of review that is applied to a magistrate judge's report and recommendation is dependent upon whether a party files objections – the Court need not review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, the Court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). Nonetheless, "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154.

- ***Summary Judgment***

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party carries "the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the

moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, if the burden rests on the non-moving party, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Secs. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010).

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But, if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and to show the fact in contention is material—i.e., a fact that might affect the outcome of the suit under the governing law—and that the dispute is genuine. *Anderson*, 477 U.S. at 248, 250; *see also Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed.R.Civ.P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. "The court need consider only the cited materials, but it may consider any other materials in the record." Fed.R.Civ.P. 56(c)(3). If, after considering the arguments and materials in the record, it appears that jurors of reason could find by a preponderance of the evidence that the defendant is liable, then the court should not grant summary judgment. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027-28 (9th Cir. 2008). If, however, jurors of reason could not determine that plaintiff is entitled to a judgment in his favor, then summary judgment is appropriate. *Id.* at 1028.

Under this standard, the Court is only to consider admissible evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to

constitute opposing affidavits); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (declarations and other evidence that would not be admissible may be stricken). A "genuine" issue of "material" fact cannot be created by a party simply making assertions in its legal memoranda. *See Varig Airlines v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (1982). Indeed, a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007). Moreover, statements must allege personal knowledge. *See Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990) ("Like affidavits, deposition testimony that is not based on personal knowledge and is hearsay is inadmissible and cannot raise a genuine issue of material fact sufficient to withstand summary judgment."). Speculation is not competent evidence. *Huggins v. Deinhard*, 134 Ariz. 98, 104, 654 P.2d 32, 38 (App. 1982); *Nelson v. Pima Cmty. College*, 85 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Soremekun*, 509 F.3d at 985 (conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment).

### Factual and Procedural History

The parties do not object to the Magistrate Judge's factual determinations. The Court has reviewed and adopts the Magistrate Judge's factual and procedural history.

### Federal Tort Claims Act and the Discretionary Function Exception

The FTCA "is the exclusive remedy for tortious conduct by the United States." *Federal Deposit Ins. Corp. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998); 28 U.S.C. § 2679. Under the FTCA, liability may be imposed "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also United States. v. Olsen,* 546 U.S. 43, 44 (2005).

However, this Court may not exercise jurisdiction over FTCA claims in which the United States has not "unequivocally expressed" that it has waived its sovereign immunity. *United States v. White Mt. Apache Tribe,* 537 U.S. 465, 472 (2003). In

addition, the factual allegations in a petitioner's claim must "fall[] within the terms of the waiver." *Id.* The United States' maintains sovereign immunity when a claim arises under the discretionary function exception. This exception applies to:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, *whether or not the discretion involved be abused*.

28 U.S.C. § 2680(a) (emphasis added).

"In order to determine whether the discretionary function exception applies, the court must engage in a two-step inquiry." *Nurse v. United States,* 226 F.3d 996, 1001 (9th Cir. 2000). The threshold question for the court is "whether the challenged conduct involves an element of judgment or choice." *Id.* "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal citations and quotations omitted). However, an agency's conduct involves an element of choice when "no statute or agency policy dictates the precise manner in which the agency is to complete the challenged task." *Green v. United States*, 630 F.3d 1245, 1249-50 (9th Cir. 2011) (*citing Childers v. United States,* 40 F.3d 973, 976 (9th Cir. 1995)).

If the conduct involved a choice, the second part of the inquiry is "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* (*citing Gaubert*, 499 U.S. at 322-23); *see also United States v. Varig Airlines*, 467 U.S. 797, 813 (1984). The shield covers actions that "involve[] considerations of social, economic, or political policy." *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996). "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 323-24. "The determination of whether given conduct falls within the discretionary function exception must focus on the 'nature of the

- 5 -

conduct, rather than the status of the actor.'" *Nurse*, 226 F.3d at 996 (quoting *Gaubert*, 499 U.S. at 322).

"If the challenged action satisfies both []prongs, that action is immune from suit—and federal courts lack subject matter jurisdiction—*even if the court thinks the government abused its discretion or made the wrong choice*." *Green*, 630 F.3d at 1249-50 (emphasis added). At summary judgment, the Government must affirmatively establish the exceptions' applicability to strip the district court of jurisdiction. *O'Toole v. United States*, 295 F.3d 1029, 1032 (9th Cir. 2002).

***Criminal Investigation***

- ***Discretionary Decisions in Criminal Investigation***

In this instance, the Court must first address whether the executive branch has given the U.S. Border Patrol discretion for the agents' actions during its criminal investigation of the Martinez family.

The Magistrate Judge conceded that the agents' investigation and arrest were discretionary, and not subject to mandatory regulations. (Doc. 150 at 9.) Furthermore, Plaintiffs do not dispute agents' discretion, nor provide any mandatory regulations which outline specified conduct agents must follow during a criminal investigation.

- ***Indian Towing Analysis***

The R&R determined that while the decisions to investigate were discretionary, when agents made those decisions they could not do it in a "slipshod manner." (Doc. 150 at 9.) Therefore, agents' poor investigative techniques raise a genuine issue for trial. (*Id.*) To come to her decision, the Magistrate Judge primarily used a line of cases starting with *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955). This case and the cases following its reasoning essentially state that the government may make discretionary choices, but once made, there is an obligation to exercise due care in implementing these choices.

The Government asserts that *Indian Towing* and its progeny do not apply to criminal law enforcement investigations, but rather to ministerial decisions, or design-implementation determinations. (Doc. 151 at 3 (*citing Gonzalez v. United States*, 814

- 6 -

F.3d 1022, 1035 (9th Cir. 2016)). It argues that the *Indian Towing* analysis is also no longer applicable to the discretionary function exception; a change noted in *Gaubert,* 499 U.S. at 325. (Doc. 151 at 3-4); s*ee e.g., Harrell v. United States,* 443 F.3d 1231, 1237 (10th Cir. 2006) ("Since *Gaubert*, several Circuit Courts of Appeals . . . have expressly recognized that *Indian Towing* is simply not persuasive authority in the context of the discretionary function exception.") The Government claims the Ninth Circuit evaluates criminal investigations based only on the two-fold test, not the more stringent design-implementation sub-test used by the Magistrate Judge. (Doc. 151 at 5.)

Like the Magistrate Judge, Plaintiffs argue that agents were required to exercise due care in their investigation. (Doc. 153 at 3.) Plaintiffs also posit that their constitutional rights were violated when they were held without probable cause because of a negligent canine search, negligent drug testing, and an unlawful interrogation. (Doc. 153 at 2, 4.) However, Plaintiffs' support includes only case law issued prior to the *Gaubert* decision, cases that were not pursuant to criminal investigations, or cases that are factually distinguishable.

The Court finds that the Ninth Circuit has rejected analyzing criminal investigations under the *Indian Towing* standard, and the two-prong test is appropriate to determine if the discretionary function applies. *See Gonzales,* 814 F.3d at 1034-35; *see also Alfrey v. United States,* 276 F.3d 557, 567 (9th Cir. 2002). Furthermore, as conceded by Plaintiffs, criminal law enforcement investigations are discretionary and are covered by the discretionary function exception if the actions also implicate policy concerns. *See Sabow,* 93 F.3d at 1452; *Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994).

- ***Policy Concerns in Law Enforcement Investigation***

The only remaining issue is whether the actions implicated concerns about "social, economic, or political policy." *Sabow*, 93 F.3d at 1451.

"The investigation of crime involves policy judgments at the core of the executive branch. In investigations . . . the executive must consider the reliability of the information, the relative importance of the crime, and the agency's mission and

resources." *Gonzalez*, 814 F.3d at 1032; *Kearns v. United States*, CV 4-1937 PHX-NVW, 2007 WL 552227 at *21 (D. Ariz. Feb 21, 2007), rev'd and remanded on other grounds, 07-15769, 2009 WL 226207 (9th Cir. Jan. 28, 2009) ("As a general matter, once the decision to investigate is made, "Congress did not intend to provide for judicial review of the quality of the investigation as judged by the outcome.").

The policy basis for an investigation is not undermined by incompetence or abuse of discretion. "Investigations by federal law enforcement officials . . . clearly require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation. . . . [A]s long as conduct is discretionary and of the type meant to be protected by the discretionary function exception, the exception applies even where a government actor abuses his or her discretion and even where the conduct is tortious or demonstrates poor judgment." *Parker v. United States*, CV 10-1407-PHX-SRB, 2011 WL 13189942, at *6–7 (D. Ariz. May 6, 2011), *aff'd*, 500 Fed. Appx. 630 (9th Cir. 2012) (*citing Sabow,* 93 F.3d at 1452 n.6, 1453-54); *Gasho,* 39 F.3d at 1435; 28 U.S.C. § 2680(a)). The exception applies to criminal investigative actions even if they are appalling, negligent, or bad investigative technique. *See e.g., Alfrey*, 276 F.3d at 565-66 (FBI's actions were "alarming instances of poor judgment and a general disregard for sound investigative procedure," but still implicated policy considerations); *see also Casillas v. United States,* CV 07-395-TUC-DCB (HCE), 2009 WL 735193 at *12 (D. Ariz. 2009), *report and recommendation adopted*, 2009 WL 735188 (D. Ariz. 2009) (obtaining search warrant with errors in the affidavit still implicated policy concerns of protecting the public from criminal activity); *Tsolmon v. United States*, CV 13-3434, 2015 WL 5093412 at *11 (S.D. Tex. Aug. 28, 2015) *aff'd*, 841 F.3d 378 (5th Cir. 2016) (Incompetence and drawing wrong conclusion from evidence "do[es] not establish the egregious bad faith or intentional misconduct that courts have construed to be nondiscretionary conduct.").

Moreover, whether an action implicates policy considerations does not depend on the "agent's subjective intent in exercising discretion . . . but on the nature of the actions and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. "In

other words, what matters is the type of decision being challenged not what the decisionmaker was thinking at the time." *Davis v. United States*, 196 F. Supp. 3d 106, 118 (D.D.C. 2016) (internal quotations omitted).

With few exceptions, the Ninth Circuit has found that a discretionary criminal investigation is covered by the discretionary function exception *unless:* (1) there was actually a mandatory guideline the agent needed to follow and did not, or (2) there was truly no logical basis for the agents' actions (i.e. choice was based on a constitutional violation or otherwise was not a viable way to further an investigation), *see, e.g., Sabow*, 93 F.3d at 1454; *see also Patel v. United States*, 806 F.Supp. 873, 878 (N.D.Cal. 1992).

### Tort Claims Under the Discretionary Function Exception

The Government also maintains sovereign immunity for certain types of tortious conduct. 28 U.S.C. § 2680(h). However, the "law enforcement proviso" limits this immunity, providing an avenue for relief to a petitioner when the tort is committed by a law enforcement officer. "On its face, the law enforcement proviso applies where a claim both arises out of one of the proviso's six intentional torts [assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution], and is related to the 'acts or omissions' of an 'investigative or law enforcement officer'" . . . who is "acting within the scope of his office or employment." *Millbrook v. United States*, 569 U.S. 50, 55 (2013) (quoting 28 U.S.C. § 1346(b)); *see also Arnsburg v. United States*, 757 F.2d 971, 978 (9th Cir. 1985). But, the Ninth Circuit has concluded that even where the law enforcement proviso applies, the discretionary function exception trumps the proviso. *See e.g., Nurse*, 226 F.3d at 1002–03.

Therefore, where a defendant can demonstrate that "the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under § 2680(h)." *Gasho*, 39 F.3d at 1435 (citing *Wright v. United States*, 719 F.2d 1032, 1035 (9th Cir. 1983)); *Gray v. Bell*, 712 F.2d at 507-08 (D.C. Cir. 1983) (plain language of 28 U.S.C. § 2680 applies to *any claim* based on a discretionary function).

///

- *Analysis*

   Plaintiffs argue the agents' actions were negligent, shoddy, and abusive. Therefore, the actions cannot be grounded in policy considerations. This is a backwards approach, allowing only good discretionary decisions to be immune from suit. This is not the purpose of the discretionary function exception.

   To the contrary, the Court finds that the types of decisions made by Border Patrol agents implicated the policy concern of discouraging the importation of illegal substances. These decisions included: conducting a canine search; administering drug tests; separating, detaining, and interrogating Plaintiffs; and presenting the affidavit of probable cause to a magistrate judge. Each stage required discretionary choices: evaluating the time, energy, and resources to put into the investigation to further the goal of preventing drug trafficking. The discretionary function exception applies to the alleged negligent actions. 28 U.S.C. § 2680(a); *see Alfrey*, 275 F.3d at 559. It also precludes Plaintiffs' claims of assault and false imprisonment. *See Gasho*, 39 F.3d at 1435; *Sheehan v. United States*, 896 F.2d 1168, (9th Cir. 1990).

   The conclusion that poorly implemented actions are not covered by the exception also fails because it evaluates the exception under a subjective rather than objective standard. For example, looking at the details of agents' interrogative techniques requires the Court to delve into the subjective intent of the agent for each question during the interrogation, rather than looking to the objective policy consideration underlying interrogations in general. Our circuit rejects this subjective analysis. *Gonzalez*, 814 F.3d at 1033*; see also Nurse*, 226 F.3d at 996.

   The case law is clear, even an incompetent investigation is immune from suit under the FTCA when the actions are discretionary and implicate public policy. As a matter of law, the agents' criminal investigation and arrest is precluded from review by this Court under the discretionary function exception.

   The only additional manner in which Plaintiffs' claims may proceed under the FTCA is if Plaintiffs present a viable claim that a constitutional violation occurred, or a viable claim of intentional infliction of emotional distress.

### *False Imprisonment*

Plaintiffs' claim of false imprisonment is precluded under the discretionary function exception. However, Plaintiffs allege a constitutional violation occurred because Border Patrol agents detained the Martinez family without probable cause. (Doc. 153 at 9.) Plaintiffs assert that the magistrate judge would not have found probable cause for arrest had agents included exculpatory information in the Border Patrols' affidavit for probable cause. (*Id.*)

"[T]he Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply." *Galvin v. Hay*, 374 F.3d at 758.

Nonetheless, under the FTCA, "suits against the United States are governed by the substantive law of the place where the act or omission complained of occurs." *McMurray v. United States*, 918 F.2d 834, 836 (9th Cir. 1990). Under Arizona law, false imprisonment occurs when a person is detained "without his consent and without lawful authority." *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975). "A detention which occurs pursuant to legal authority, such as a valid warrant, is not an unlawful detention. . . . [i]f the arrest or imprisonment has occurred pursuant to valid legal process, the fact that the action was procured maliciously and without probable cause does not constitute false arrest or false imprisonment." *Id.* (internal citations omitted).

Border Patrol agents have authority to make an arrest if the agent has reason to believe a felony has occurred or is in the process of being committed, but the arrestee must be "taken without unnecessary delay" before a judge for a probable cause determination. 8 U.S.C. § 1357(a)(4)). An officer has probable cause to arrest when he is provided "reasonably trustworthy information of facts and circumstances sufficient to lead a reasonable man to believe an offense is being or has been committed and that the person to be arrested committed it." *Hansen v Garcia*, 713 P.2d 1263, 1265 (Ariz. Ct. App. 1986). "Thus, the critical inquiry is to the facts as they existed at the time of the arrest, and not afterward." *Reams v. City of Tucson*, 701 P.2d 598, 601 (Ariz. App. 1985). "After-the-fact judicial participation cannot validate an unlawful arrest." *Id.* at 602. "Whether a given state of facts constitutes probable cause is always a question of law to

be determined by the court." *Cullison v. City of Peoria*, 584 P.2d 1156, 1159 (Ariz. 1978).

A preliminary hearing determination is generally sufficient to establish probable cause "so long as the evidence known to the arresting officers is not materially different from the evidence presented at the preliminary hearing." *Wige v. City of Los Angeles*, 713 F.3d 1183, 1185 (9th Cir. 2013). Issues presented to a magistrate judge for a probable cause determination are "materially different" when: (1) "the plaintiff alleges that the arresting officer lied or fabricated evidence presented at the preliminary hearing," or (2) when "additional evidence not available to the officers at the time of the arrest is presented at the preliminary hearing." *Id.* at 1186. Under the second exception, a plaintiff may litigate the issue of probable cause "with the falsified evidence removed from the equation or, in cases involving intentional concealment of exculpatory evidence, with the undisclosed evidence added back into the equation." *Id.* Plaintiff must demonstrate not only that there was a deliberate or reckless omission, but must also show that the omission was "material to the finding of probable cause." *Smith v. Almada,* 640 F.3d 931, 937 (9th Cir. 2011) (*quoting KRL v. Moore,* 384 F.3d 1105, 1107 (9th Cir. 2011).

Plaintiffs do not contend that officers presented false evidence. Nor do they allege information that was not available at the time of arrest was presented at the preliminary hearing. Plaintiffs argue the facts presented for probable cause were "materially different" because: (1) agents did not inform the court that the canine handler was predisposed to believe the vehicle had drugs, (2) agents failed to tell the magistrate judge that the instructions for the drug test were not correctly implemented, (3) agents did not include Martinez's subsequent retraction of his confession or include that they used unreliable techniques for obtaining the confession. (Doc. 153 at 9.) Because this evidence could be perceived as "materially different," they argue there was a genuine issue of whether agents had probable cause for arrest. (Doc. 150 at 13.)

The Government says that the process was lawful and therefore precluded because: (1) agents had probable cause to believe a felony was in progress, (2) Plaintiffs were read their *Miranda* warnings before Mr. Martinez confessed, and (3) the case

against Mr. Martinez was presented to a magistrate judge the next day, wherein the judge confirmed that agents had probable cause for arrest. (Doc. 127 at 15.)

- ***Analysis***

The Court addresses each allegation that the affidavit was "materially different" separately: during the canine sniff, the drug test, and the confession. The Court finds that Plaintiffs' argument that the family was held without probable cause fails for three reasons. First, the detention was pursuant to a valid legal process. Second, Plaintiffs' arguments require the Court to look at the evidence in hindsight. Finally, even with the exculpatory evidence included, there was sufficient evidence for a probable cause determination. Viewing the facts in favor of Plaintiffs, there is no genuine material issue of fact as to whether there was lawful authority for the detainment, and summary judgment is appropriate.

In his statement of probable cause, Agent Brian Derryberry noted that he had received information that liquid methamphetamine was discovered destined for Phoenix. *United States v. Nieves-Martinez,* No. CR 11-01812-PHX-DGC, Doc. 1 at 5. The affidavit stated the following. CBP Agent Roden's canine drug dog alerted twice on Plaintiffs' vehicle. *Id.* In secondary, the windshield wiper fluid tested positive for methamphetamine. *Id.* Mr. Martinez was given his *Miranda* warnings and waived his right to counsel. *Id.* "He stated that he did not know about anything about the drugs in his vehicle . . . and did not need to engage in such activities for money." *Id.* After discussing the matter with his wife and son, Mr. Martinez admitted he left his vehicle in a repair shop and arranged a deal to receive $10,000 in return for driving the vehicle into the United States. *Id.* Furthermore, Derryberry noted that the windshield wiper fluid was being treated as hazardous, and samples taken for further testing. *Id.* at 7-8.

///
///
///
///
///

- **Canine Alert**

The Magistrate Judge determined that "[a] K9 alert may provide probable cause but only if the circumstances surrounding the alert are indicative of reliability" and stated that Agent Roden's decision to stop the canine after it sniffed, muscles tightened, and head snapped back preempted a full alert. (Doc. 150 at 10.) Without the full alert, the Magistrate Judge contended that Plaintiffs may have been held without probable cause. (*Id.*) Plaintiffs also argued that Agent Roden was predisposed to find drugs in Plaintiffs' vehicle, and because of this, Plaintiffs were held without probable cause. (Doc. 153 at 9.) This information was never relayed to the magistrate judge for the probable cause proceedings.

Plaintiffs presented expert testimony from canine expert Edward Dobbertin. Dobbertin based his evaluation on the deposition of Agent Roden. (Exh. 10, Doc. 137-7, pp. 1-40.) He conceded that Loti, Agent Roden's canine, had behavioral changes corresponding with an alert, but believed Roden should have taken additional steps to make sure the odor was from an illegal substance. (*Id.* at 4.) However, Dobbertin conceded that all dogs alert differently, and that an alert is a subjective determination by the handler. (*Id.* at 11.) He also admitted that Agent Roden stated that his dog did alert, but Dobbertin felt that that "alert" meant Roden did not let the dog finish the alert by sitting down. (*Id.* at 4-6.)

Dobbertin did not offer his expert opinion based on personal knowledge, and did not state that Loti did not alert at all, but that he believed there should have been more follow through with the canine after his detection signal. In addition, Dobbertin's opinion lacks adequate foundation and is speculative. As such, the Court will not consider it. *See Nelson*, 85 F.3d at 1081-82.

Furthermore, Plaintiffs never questioned the training and reliability Loti's alerts. Roden and Loti completed the Border Patrols' Detection Canine Certification. (Exh. B.) Several times during his deposition, Agent Roden indicated that his dog alerted. (Exh. 7, Doc. 140-5 at 8, 9, 11, 16-17.) In fact, Plaintiffs' Statement of Facts states that Roden indicated Loti alerted on the front of the vehicle on two separate occasions. (Doc. 139-1

at 9-10.) Other than Dobbertin's speculation that the alert should have been investigated more completely, there is no evidence of an unreliable canine alert.

Even looking at the facts in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have not shown that a "materially different" fact was excluded from the probable cause determination. Plaintiffs essentially argue that agents should have presented Mr. Dobbertin's conflicting theory that Loti did not alert to the magistrate judge. This information was neither available nor relevant to whether *at the time* Agent Roden observed Loti's alert. Therefore, it is not material to the determination of probable cause.

Plaintiffs further argue that the affidavit should have disclosed that Agent Roden was predisposed to finding drugs in Plaintiffs' vehicle because he was forewarned about a possible drug transport before the stop. Plaintiffs have failed to show that Border Patrol's failure to disclose this information was either reckless or deliberate. There are a multitude of reasons why agents may not disclose the existence of a confidential informant, these reasons implicate policy considerations. Nonetheless, this information would not have changed the probable cause determination because Agent Roden observed his dog alert—not once but twice—onto the grill of the vehicle. The additional evidence, therefore, is not material to the probable cause determination.

- ***Drug Testing***

First of all, the subsequent lab testing of the windshield wiper fluid is not relevant to the determination of whether there was probable cause at the time of presentation to the magistrate judge. Considering subsequent knowledge would undermine evaluating the situation from the perspective of the agent at the time of arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

Plaintiffs argue that both the negligent testing of the windshield wiper fluid and agents' subsequent indecision about whether one test was negative undermined the probable cause determination. (Doc. 139 at 14-15.) Plaintiffs further contend that agents should have known and presented their inadequate testing methods and contradictory results to the magistrate judge. (Doc. 153 at 9.)

Plaintiffs presented deposition testimony of Agents Devin Reno, Brian Derryberry, and Francisco Mendez-Garcia. Each agent stated that two drug tests were performed on the windshield wiper fluid, and at least one resulted in a positive test. (Depo. Reno, Exh. 5 at 39-40, 42; Depo. Derryberry, Exh. 8 at 29, 31, 36; Depo. Mendez-Garcia, Exh. 9 at 37-38.)

Plaintiffs also presented deposition testimony of expert Leo Kadehjian, who concluded that the drug tests were performed incorrectly and did not result in a reliable test for methamphetamine. (Doc. 39 at 18-19; Doc. 139-1 at 23.)

Like the canine alert, Plaintiffs argue that Defendants should have known that their drug testing methods were subpar. Furthermore, they should have alerted the magistrate judge that one of the drug tests was not positive for methamphetamine. However, there is no assertion that at the time of the test, agents knew the test was unreliable or that their testing methods were insufficient. Furthermore, all agents stated that at least one of the tests was positive for methamphetamine.

Even though Mr. Kadehjian later noted the administration of the field test was negligent, this does not demonstrate that the evidence available to the agents at the time was materially different to that presented at the determination of probable cause. Even if the agents had informed the court that one of the tests was negative, the agents still believed at that time that the other test was positive for methamphetamine, establishing probable cause. Adding the excluded evidence (but not the subsequent revelations) does not undermine the probable cause determination.

Furthermore, agents did not know that their testing methods were faulty, and therefore Plaintiffs have not demonstrated that the omission was deliberate or reckless.

- ***Confession***

Plaintiffs argue agents should have informed the magistrate judge that Mr. Martinez prefaced his confession with a claim of innocence. But, Agent Derryberry did note that Mr. Martinez maintained his innocence at points in the interrogation. Therefore, the omission was not materially different.

Even if Agent Derryberry had included Plaintiffs' assertion that Mr. Martinez

simultaneously confessed and claimed innocence, this does not undermine the probable cause determination. Mr. Martinez admitted that he provided a confession (Exh. 1, Doc. 139-3 at 25), and provided details of the illegal transaction (*Id.* at 27-28).

Plaintiffs' false imprisonment claim fails as a matter of law because Mr. Martinez's arrest and detainment was pursuant to valid legal process. Furthermore, even if the magistrate judge had been given the additional information as Plaintiffs suggest, the information was not material to the probable cause determination. Due to the aforementioned, summary judgment is granted to the Government for the claim of false imprisonment.

### *Intentional Infliction of Emotional Distress ("IIED")*

"The Ninth Circuit has held that 'the tort of intentional infliction of emotional distress is not excluded as a matter of law from [the] FTCA by § 2680(h).'" *Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990), *as amended*, 917 F.2d 424 (9th Cir. 1990). District Courts may exercise jurisdiction over FTCA IIED claims, but only if the underlying conduct for the claim is not an act protected by sovereign immunity. *Sheehan*, 896 F.2d at 1168. To survive summary judgment, a plaintiff must demonstrate that the agents' actions were intended to inflict emotional distress: In other words, a plaintiff must plead facts suggesting that agents' actions were motivated by malice. *Gasho*, 39 F.3d 1420, 1434 (9th Cir. 1994).

"Under Arizona law, a plaintiff alleging the intentional infliction of emotional distress must plead and prove that: (1) the defendant's actions were extreme and outrageous, (2) the defendants either intended to cause emotional distress or acted in reckless disregard of that result, and (3) severe emotional distress in fact occurred." *Gasho*, 39 F.3d at 1432, 1171. For conduct to be deemed extreme and outrageous, it must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ford v. Revlon, Inc.,* 734 P.2d 580, 585 (1987).

In this instance, Plaintiffs claim agents caused them emotional distress by separating the family, questioning and threatening incarceration, verbal abuse, offering to release the children if Mr. Martinez confessed, continuing the investigation after Mr.

- 17 -

Martinez offered a false confession, and Mr. Martinez's subsequent incarceration. (Doc. 20 at 7.)

The decision to interrogate is a discretionary decision grounded in the policy concern of deterring illegal transport of illicit drugs in this country. "The discretionary function exception covers [investigative determinations of reliability of information] because "[l]aw enforcement personnel receive warnings, rumors and threats all the time [and] are constantly required to assess the reliability of the information they receive, and to allocate scarce personnel resources accordingly." *Gonzalez,* 814 F.3d at 1032-33 (citing *Gasho*, 39 F.3d at 1435). As such, the actions are covered under the discretionary function exception. *See e.g., Gasho*, 39 F.3d at 1435-36 (affirming summary judgment on IIED claims resting on actions covered by FTCA exception).

In *Gasho v. United States*, plaintiffs raised a genuine issue of whether customs agents' acts were malicious though testimony of agents stating that agents arrested plaintiffs not because agents had probable cause, but because plaintiffs made the agents mad. 39 F.3d at 1434. In the instant case, agents had probable cause to detain and interrogate Plaintiffs. Furthermore, the separation and questioning of the Plaintiffs were plausible tactics to further a criminal investigation.

However, Plaintiffs have demonstrated that there is a genuine issue of material fact as to whether agents' attempts to obtain a confession were outrageous and motivated by malice. First, Mr. Martinez claims that Agent Casillas screamed at him that all Mexicans were drug dealers. This statement serves no purpose in furthering agents' investigation, and suggests malice towards the Martinez family, who are Mexican. Furthermore, such racially-motivated comments are intolerable in our society, should not be implemented as a means of interrogation, and could be perceived by a fact-finder as extreme and outrageous.

Second, Plaintiffs allege that the agents: handcuffed Mr. Martinez; continually shouted accusations at him; threatened to separate his family; told him to "have the balls" to admit he was transporting drugs; ensured that Mr. Martinez watched the agents transport his family to another location; and isolated him in a windowless cell. (Doc. 130-

10 at 4-5.) These admissible, detailed allegations bolster Petitioner's claim.

Third, Plaintiffs offered deposition testimony of Dr. Richard Leo, who noted that agents should have known that their interrogation methods employed by agents were coercive and likely to result in a false confession. (Exh. 12, Doc. 139-8 at 19.) He stated that agents' testimony and Plaintiffs' testimony varied greatly, with Plaintiffs' version revealing coercion and intimidation. (*Id.* at 14.)

Given these allegations, a finder of fact could determine that agents' interrogation methods were coercive and overwhelmed Plaintiffs' free will, resulting in a false confession. If the agents' interrogation was motivated by discriminatory animus, was coercive, and resulted in a confession that agents were likely to know was false, the agents' interrogation cannot be protected under the Constitution. The Court finds that Plaintiffs have raised a genuine issue of material fact as to whether the agents' interrogation of Mr. Martinez constituted intentional infliction of emotional distress.

### *Conclusion*

Defendants have affirmatively demonstrated that the discretionary function exception applies to Border Patrol agents' actions as a matter of law as to Plaintiffs' claims of negligence, gross negligence, assault, and false imprisonment. Furthermore, Plaintiffs have not raised a genuine issue of material fact affording them judgment on their claims.

Plaintiffs' claim of intentional infliction of emotional distress presents a genuine issue of material fact, precluding summary judgment.

Therefore, IT IS ORDERED:

1. The Report and Recommendation (Doc. 150) is ADOPTED IN PART;

2. The Government's Motion for Summary Judgment (Doc. 127) is GRANTED as to Plaintiffs' claims of negligence, gross negligence, assault, and false imprisonment.

3. The Government's Motion for Summary Judgment (Doc. 127) is DENIED as to the Plaintiffs' claim of intentional infliction of emotional distress.

4. The parties shall file a Joint Proposed Pretrial Order within thirty (30) days of the date of this Order. A sample Joint Proposed Pretrial Order is attached this Order.

5. A Status Conference is set for Wednesday, August 15, 2018, at 10:30 a.m. in front of the Hon. Cindy K. Jorgenson, Courtroom 5C of the Evo A. DeConcini United States Courthouse, 405 W. Congress Street, Tucson, Arizona 85701.

Dated this 9th day of July, 2018.

Honorable Cindy K. Jorgenson
United States District Judge

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8          ,                        )
                                    )
9          Plaintiff,               )
                                    )    No. CIV        -TUC-CKJ
10   vs.                            )
                                    )    **PROPOSED SEPARATE/JOINT**
11         ,                        )    **PRETRIAL STATEMENT/ORDER**
                                    )
12         Defendant.               )
                                    )
13   _____ )

14         Pursuant to the Scheduling Order entered _____, 20__, following

15   is the Proposed Final Pretrial Statement/Order to be considered at the pretrial conference.

16   **A.      COUNSEL FOR THE PARTIES**

17         Plaintiff(s):

18         Defendant(s):

19   **B.      STATEMENT OF JURISDICTION**

20         Cite the statute(s) that gives the Court jurisdiction, and whether jurisdiction is

21   disputed.

22         (E.g.:  Jurisdiction in this case is based on diversity of citizenship under Title 28

23   U.S.C. § 1332.  Jurisdiction is (not) disputed.)

24   **C.      NATURE OF ACTION**

25         Provide a concise statement of the type of case, the cause of the action, and the

26   relief sought.

27         (E.g.:  This is a products liability case wherein the plaintiff seeks damages for

28   personal injuries sustained when he fell from the driver's seat of a forklift.  The

plaintiff contends that the forklift was defectively designed and manufactured by the defendant and that the defects were a producing cause of his injuries and damages.)

**D.    CONTENTIONS OF THE PARTIES**

With respect to each count of the complaint, counterclaim or cross-claim, and to any defense, affirmative defense, or the rebuttal of a presumption where the burden of proof has shifted, the party having the burden of proof shall list the elements or standards that must be proved in order for the party to prevail on that claim or defense.

(E.g.:  In order to prevail on this products liability case, the plaintiff must prove the following elements . . . )

(E.g.:  In order to defeat this products liability claim based on the statute of repose, the defendant must prove the following elements . . . )

**E.    STIPULATIONS AND UNCONTESTED FACTS**

**F.    CONTESTED ISSUES OF FACT AND LAW**

**G.    LISTS OF WITNESSES**

A jointly prepared list of witnesses, identifying each as either plaintiff's or defendant's and indicating whether a fact or expert witness, must accompany this proposed order.

A brief statement as to the testimony of each expert witness must be included.

**H.    LIST OF EXHIBITS**

Each party must submit with this proposed order a list of numbered exhibits, with a description of each containing sufficient information to identify the exhibit, and indicating whether an objection to its admission is anticipated.

Exhibits should be marked according to instructions received from the court.

**I.    MOTIONS IN LIMINE**

Motions in limine shall be filed and served upon each party with this proposed order.  Any opposition shall be filed and served within fourteen (14) days.

**J.    LIST OF ANY PENDING MOTIONS**

**K.    PROBABLE LENGTH OF TRIAL**

**L.    FOR A BENCH TRIAL**

Proposed findings of fact and conclusions of law shall be served and filed on each party with this proposed order.

**M.    FOR A JURY TRIAL**

Stipulated jury instructions shall be filed thirty (30) days before trial.  Instructions which are not agreed upon, and a concise argument in support of the instruction, shall be filed and served upon each party thirty (30) days before trial.  Objections to the non-agreed upon instructions shall be filed and served upon each party within fourteen (14) days.

**N.    CERTIFICATION**

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1.    All discovery has been completed.

2.    The identity of each witness has been disclosed to opposing counsel.

3.    Each exhibit listed herein:  (a) is in existence; (b) is numbered, and: (c) has been disclosed and shown to opposing counsel.

**O.    ADOPTION**

The Court may adopt this proposed Joint Pretrial Order at the Pre-Trial Conference or subsequent hearing.

DATED this _____ day of _____, 20___.

APPROVED AS TO FORM AND CONTENT


_____          _____
Attorney for Plaintiff                                    Attorney for Defendant